**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 MAR 14   P 3: 23

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

|  |  |  |
|---|---|---|
| **NADINE GODBOLT,** | * | |
|  | * | |
| **Plaintiff,** | * | |
|  | * | |
| **v.** | * | **Case No.: GJH-14-3546** |
|  | * | |
| **TRINITY PROTECTION** | * | |
| **SERVICES, INC.** | * | |
|  | * | |
| **Defendant.** | * | |
|  | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Nadine Godbolt brought claims against her former employer, Defendant Trinity

Protection Services, Inc. ("Trinity"), for sex/gender discrimination under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, discrimination under the Americans with

Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.*, unlawful termination in

violation of Virginia state policy, and civil conspiracy. ECF No. 27. This Memorandum Opinion

and accompanying Order address Defendant's Motion for Partial Dismissal of Plaintiff's

Amended Complaint and Motion to Strike Redundant Claims, ECF Nos. 17 and 18, Plaintiff's

Opposition, ECF Nos. 22 and 23, and Defendant's Reply, ECF No. 26. The Court finds that a

hearing is unnecessary in this case. *See* Loc. R. 105.6 (D. Md. 2014). For the reasons set forth

herein, Defendant's Motion to Strike Count II is granted, and Defendant's Motion for Partial

Dismissal is granted as to Counts IV and V, and denied as to Count I.

## I.     BACKGROUND

Godbolt was employed by Trinity, a security services contracting corporation, as a

Contract Security Officer from July 31, 2011, until her termination in July, 2012. ECF No. 27 at

¶ 8; ECF No. 23 at Ex. 8. Godbolt was initially supervised by Sabrina Currie. ECF No. 27 at ¶

12. On several occasions between July 31, 2011, and October, 2011, Currie denied Godbolt's

requests to work certain available shifts, and assigned those shifts to "newly hired" male officers

who were less senior than Godbolt.  ECF No. 27 at ¶¶ 13, 16, 18. Godbolt also alleges that

Currie revoked another employee's pre-approved schedule change when she discovered that it

was Godbolt who was scheduled to switch with him, and that, on September 23, 2011, Currie

"became belligerent" about the requested switch, "chased Godbolt down to her car after she was

off the clock and was on her way home, and threatened her with a weapon." *Id.* at ¶¶ 15, 16.

Following that incident, in which Godbolt alleges that Currie "was in fact the aggressor,"

Godbolt was transferred from her job post "as a punishment." *Id.* at ¶ 17. Weeks after her

transfer, Godbolt was again transferred to a third job location "to accommodate another male

officer whose post had closed." *Id.*

Godbolt further asserts that she was pressured by her new supervisors, Robert Burke and

Mariam Haigler, "to change her time sheet log from a time different than her actual worked

hours" on both March 23, 2012, and May 1, 2012. *Id.* at ¶ 19. When she refused to "falsify" her

time card on March 23, 2012, Haigler and Burke "conspired and changed her time card by

themselves and sought to have Godbolt sign off on the time card which they had already changed

without Godbolt's consent." *Id.* at ¶ 20. According to Godbolt, Burke also had another employee,

Officer Bryant, change his time card to "falsely synchronize Godbolt's forced sign out" on May

1, 2012. *Id.* at ¶ 21. That same day, Godbolt wrote a letter to Trinity's Human Resources

2

Director "to protest against the unlawful employment practice." *Id.* at ¶ 22. Godbolt contends

that "[i]nstead of addressing [her] complaints," the Human Resources Director "sided with their

managers and Godbolt received adverse employment action by way of '. . . one and only

warning' which ultimately led to termination of her employment." *Id.* Also on May 1, 2012,

Godbolt and other officers were accused of taking home, or failing to turn in, their "rover logs."

*Id.* at ¶ 23. Despite denying this allegation, Godbolt was "intimidated and forced to write a

statement admitting [it]," which resulted in her receiving a five-day suspension and ninety-day

probation, "while the other officer [who had been accused of taking a rover log], a male officer

and native African . . . was let go without any form of punishment." *Id.*

Finally, Godbolt alleges that on July 9, 2012, she experienced an asthma attack while

working for Trinity in a construction zone. *Id.* at ¶ 24. When Godbolt exhibited symptoms of

distress, requested to take off her hat and use the bathroom, and "eventually requested relief and

an ambulance," Haigler, Godbolt's supervisor on the site, "made a semblance of recognition of

Godbolt's need for medical attention . . . yet she still wrote up Godbolt and recommended her

termination from employment on the pretext that she was not wearing a hat." *Id.* at ¶ 25. Trinity

then "terminat[ed] [Godbolt's] employment based on Haigler's recommendation." *Id.* at ¶ 27.

## II.    DISCUSSION

### A.  Trinity's Motion to Strike Count II

Count II of the Amended Complaint sets forth a claim for sex/gender discrimination in

violation of Title VII. *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice

for an employer to . . . discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's . . . sex . . . or to

limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive

3

any individual of employment opportunities or to otherwise adversely affect his status as an employee, because of such individual's . . . sex."). Count I sets forth a claim for "Disparate Treatment in Violation of 42 U.S.C. § 2000e-2(a)(1)." Trinity argues that Count II should be stricken from the Amended Complaint as redundant. Because the Court concurs that these claims are duplicative, Count II will be stricken from the Amended Complaint.

Federal Rule of Civil Procedure 12(f) permits courts to strike "any redundant, immaterial, impertinent, or scandalous matter" from any pleading. Fed. R. Civ. P. 12(f). While motions to strike are generally disfavored, *see Schultz v. Braga*, 290 F. Supp. 2d 637, 655-56 (D. Md. 2003), *aff'd*, 455 F.3d 470 (4th Cir. 2006), the Court may grant such motions in a proper exercise of its discretion and power over the litigation. *See* 5C Charles A. Wright & Alan M. Miller, *Federal Practice & Procedure* § 1380 (3d ed.).

Title VII's express language gives rise to two types of discrimination claims: (1) "disparate treatment," where a plaintiff alleges that his employer violated 42 U.S.C. § 2000e-2(a)(1) by "discriminat[ing] against [the plaintiff] with respect to his compensation, terms, conditions, or privileges of employment because of [the plaintiff's] race, color, religion, sex, or national origin," and (2) "disparate impact," where a plaintiff alleges that his employer violated 42 U.S.C. § 2000e-2(a)(2) by "limit[ing], segregate[ing], or classify[ing] his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [the individual's] status as an employee, because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1), (2); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2031-32 (2015) ("These two proscriptions [contained in 42 U.S.C. § 2000e-2(a)(1) and (2)], often referred to as the 'disparate treatment' provision and the 'disparate impact' provision, are the only causes of action under Title VII.").

The crux of a disparate treatment claim is "whether a protected characteristic of the employee motivated the employment action taken by the employer." *Barnett v. Tech. Int'l, Inc.*, 1 F. Supp. 2d 572, 577 (E.D. Va. 1998) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). By contrast, the focus of a disparate impact claim is whether the plaintiff can show that a specific employment policy, although neutral on its face, is discriminatory in its application and is unrelated to any legitimate business purpose. *Id.* at 579 (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).

In the instant case, the facts pled show that Godbolt's sex discrimination claim is based on disparate treatment. Godbolt alleges that she alone was punished when both she and other officers were "alleged to be in violation of certain company policies," and that, motivated by gender, she was "serial[ly]" denied available work shifts in favor of more junior male employees. ECF No. 27 at ¶¶ 30-39. These allegations, and their supporting factual paragraphs, evince a clear intent on Godbolt's part to assert that her employer was intentionally discriminating against her by taking adverse employment actions against her and not against similarly situated male employees. In her Opposition to Trinity's Motion, Godbolt impliedly contends that her count for "sex discrimination" is in fact a disparate impact claim by arguing that "Defendant's constant and intentional denial of available hours to the Plaintiff (a female) while giving same to male officers for no business related purpose was gender discrimination against the Plaintiff." ECF No. 23 at 12. However, Godbolt's Amended Complaint only alleges that her supervisor engaged in blatant and intentional discrimination in shift assignment, and fails to assert that the shift assignment policy was in any way neutral. In fact, she explicitly contends the opposite—that her supervisor acted in a facially discriminatory manner.

Moreover, even if Godbolt's Amended Complaint was somehow construed to state a disparate impact claim, such a claim would be procedurally barred because Godbolt's EEOC charge failed to allege disparate impact. *See* ECF No. 23-6; *Banhi v. Papa John's USA, Inc.*, No. RWT-12-665, 2013 WL 3788573, at \*4 (D. Md. July 18, 2013), *aff'd*, 583 F. App'x 268 (4th Cir. 2014) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit. If the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.") (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). Given that Count I claims disparate treatment, Count II, which states a claim for "sex/gender discrimination" on a disparate treatment theory, is redundant. Trinity's Motion to Strike Redundant Claims is therefore granted.[1]

### B. Trinity's Partial Motion to Dismiss Counts I, IV and V

#### 1. Count I: Disparate Treatment in Violation of Title VII

With respect to Count I, Trinity argues that all allegations of discrimination occurring prior to September 15, 2011 must be dismissed. ECF No. 18 at 11. Under Federal Rule of Civil Procedure 12(b)(6), a complaint may not be dismissed unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of her claim that would entitle her to relief. *See* Fed. R. Civ. P. 12(b)(6); *McIntyre-Handy v. APAC Customer Servs., Inc.*, No. 4:04-CV-83, 2004 WL 5281140, at \*1 (E.D. Va. Oct. 13, 2004). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citing *Little v. Fed. Bureau of Investigation*, 1

---

[1] In the alternative to its Motion to Strike, Trinity argues that Count II should be dismissed because denials of available shifts and schedule changes are not adverse employment actions under Title VII. *See* ECF No. 18 at 7-9. The Court need not reach this issue because Count II is being stricken.

F.3d 255, 256 (4th Cir.1993)). To survive a motion to dismiss, the factual allegations of a complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's obligation is to show the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alternations omitted).

In Maryland, a plaintiff must file a Title VII discrimination charge with the EEOC within 300 days of the allegedly unlawful employment practice. *See Basil v. Md. Transp. Auth.*, No. RDB-12-556, 2013 WL 594494, at *5 (D. Md. Feb. 15, 2013) ("The general limitations period [for Title VII discrimination claims] is 180 days after the alleged unlawful employment practice. If, however, state law proscribes the alleged employment practice and the charge is to be first filed with a state deferral agency, then the limitations period is extended to 300 days. Maryland is a 'deferral state' in which the 300-day limitations period applies.") (citations omitted). For claims of disparate treatment discrimination, each instance of discrimination is considered a discrete act, and any instances occurring outside of the 300-day period are not eligible to support a plaintiff's claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-11 (2002) (distinguishing hostile work environment claims from discrimination claims on the ground that the latter are based on discrete acts, and noting that "42 U.S.C. § 2000e-2 explains in great detail the sorts of actions that qualify as unlawful employment practices," including discrimination with respect to an individual's compensation, terms, conditions, or privileges of employment, and that "[a] discrete retaliatory discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."). Godbolt filed her EEOC charge against Trinity on July 11, 2012. ECF

No. 27 at ¶ 8. Trinity is correct, then, that allegations of Title VII violations supporting Count I,
but occurring prior to September 15, 2011, would be time-barred.

However, the facts of Godbolt's Amended Complaint, as pled, preclude dismissal at this
stage of any particular allegations contained in Count I. Trinity's statute of limitations argument
is considered an affirmative defense, and courts "generally do not 'resolve contests surrounding
the facts, the merits of a claim, or the applicability of defenses' through a Rule 12(b)(6) motion."
*See Walker-Pittman v. Maryland Dep't of Transp.*, No. CCB-14-202, 2015 WL 419806, at \*6
(quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, courts
may only consider an affirmative defense raised in a Rule 12(b)(6) motion "in the relatively rare
circumstances where facts sufficient to rule on [the] affirmative defense are alleged in the
complaint," that is, where "all facts necessary to the affirmative defense clearly appear *on the
face of the complaint*." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citations
and internal quotation marks omitted) (emphasis in original).

In the instant case, it is not abundantly clear on the face of the Amended Complaint that
any facts giving rise to Godbolt's claims occurred prior to September 15, 2011. Godbolt provides
no specific dates for her alleged incidents of discrimination, other than an alleged shift switch
refusal on September 23, 2011, and an alleged disciplinary action on May 1, 2012, both of which
occurred within the 300-day period. Accordingly, dismissal of Godbolt's sex discrimination
claim, which relies at least to some extent on facts occurring within the appropriate timeframe,
would be improper.

## 2. Count IV: Unlawful Termination in Violation of State Policy

In addition to her discrimination claims, Count IV of Godbolt's Amended Complaint
alleges that she was unlawfully terminated in violation of state policy when her supervisors

attempted to coerce her into falsifying her time card and retaliated against her when she refused

to do so. ECF No. 27 at ¶¶ 47-57. This count is properly construed as a retaliation claim under

Virginia law.[2] Trinity argues that this claim is time-barred under Virginia's statutes of

limitations. ECF No. 17 at 12-13. Trinity is correct.

Virginia is an "at-will" employment state, such that when an employment contract does

not state the duration for which it is to run, either party is free to terminate the contract at will

after giving reasonable notice to the other party. *Michael v. Santera Health Sys.*, 939 F. Supp.

1220, 1227-28 (E.D. Va. 1996). The effect of this "at-will" status is that wrongful termination

claims are generally not cognizable under Virginia law. In *Bowman v. State Bank of Keysville*,

however, the Virginia Supreme Court acknowledged "a narrow exception" to the employment-

at-will rule: a plaintiff may succeed in showing wrongful termination of even at-will

employment where the employer terminated the employee in violation of Virginia public policy.

229 Va. 534, 540, 331 S.E.2d 797, 801 (1985). The court has clarified that the exception applies

where the employee is terminated based on his refusal to engage in a criminal act, as Godbolt

asserts here. *Mitchem v. Counts*, 259 Va. 179, 189, 523 S.E.2d 246 (2000).

Under Virginia law, a claim for wrongful termination is subject to a two-year statute of

limitations. *See Torabipour v. Cosi, Inc.*, No. GBL/TCB-11-1392, 2012 WL 2153168, at *5

(E.D. Va. June 12, 2012) (citing Va. Code Ann. § 8.01-248); *Michael*, 939 F. Supp. at 1229

(noting that, in 1995, the Virginia General Assembly amended section 8.01-248 to extend the

limitation period on miscellaneous causes of action, including wrongful termination in violation

of public policy, from one year to two years). Godbolt's Amended Complaint indicates that she

---

[2] Although Godbolt's claims in Counts IV and V of the Amended Complaint arise under Virginia law, *see* ECF No. 27 at ¶¶ 57, 64(h), she alleges in the Amended Complaint that "[p]art of the unlawful employment practices and discrimination forming the basis for Plaintiff's complaint occurred in . . . Maryland," such that venue is proper in this Court. Trinity has not argued that this is an improper venue for resolution of Godbolt's claims. *See* ECF Nos. 17 & 18.

was terminated sometime after May 1, 2012, *see* ECF No. 27 at ¶ 56, and her notice of termination, attached as Exhibit 8 to her Opposition, indicates that she was terminated on July 9, 2012. ECF No. 23-8. She did not file her initial Complaint until November 12, 2014—and, in fact, did not add the count for unlawful termination until April, 2015. *See* ECF Nos. 1, 27. Because Godbolt did not file her initial Complaint until two years and four months after the alleged incident, Godbolt's claims in Count IV are time-barred.

In her Opposition, Godbolt argues that her wrongful termination claim should be construed as a workers' compensation claim, and therefore is subject to a different—presumably longer—statute of limitations. This argument fails for two reasons. First, workers' compensation claims are generally distinct from wrongful termination claims, as evidenced by the fact that workers' compensation statutes in Virginia are contained in their own section of Virginia's Annotated Code. *See* Va. Code Ann. § 65.2, *et seq.* (titled "Workers' Compensation"). Second, and perhaps more importantly, workers' compensation claims, like unlawful termination claims, are also subject to a two-year statute of limitations under Virginia law. *See* Va. Code Ann. § 65.2-601 ("The right to compensation under this title ["Workers' Compensation"] shall be forever barred, unless a claim be filed with the Commission within two years after the accident."). Thus, even if Godbolt's attempt to transform Count IV into a workers' compensation claim had merit—which it does not—Count IV would be dismissed as untimely.

### 3.  Count V: Civil Conspiracy

Trinity similarly alleges that Godbolt's claim for civil conspiracy is time-barred. Plaintiffs making claims for civil conspiracy under Virginia law may allege statutory business conspiracy in violation of Va. Code Ann. §§ 18.2-499 and 18.2-500, common law conspiracy, or

both.[3] Statutory business conspiracy occurs where two or more persons "combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act." Va. Code Ann. §§ 18.2-499, 18.2-500. The Fourth Circuit has noted, with respect to these statutes, that "in an unbroken line of federal district cases . . . the federal district courts in Virginia have consistently held that a right of action is afforded [under these statutes] only when malicious conduct is directed at property, *i.e.* one's business and applies only to conspiracies resulting in business-related damages." *Conyers v. Virginia Hous. Dev. Auth.*, JRS-12-458, 2012 WL 4338649, at *7 (E.D. Va. Sept. 20, 2012) (internal quotation marks omitted) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985)); *see also Andrews v. Ring*, 266 Va. 311, 319, 585 S.E.2d 780 (2003) (holding that sections 18.2-499 and 18.2-500 do not apply to personal or employment interests); *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) (finding that these sections did not apply to Plaintiff's allegations because Plaintiff alleged injuries only to his personal employment prospects). Here, Godbolt asserts only that the alleged civil conspiracy between her supervisors and Trinity's Human Resources Department caused harm to her employment prospects and her personal health and enjoyment of life. *See* ECF No. 27 at ¶ 64. As such, Godbolt has not stated a plausible claim for statutory conspiracy, since the alleged conspiracy relates only to her personal interests and caused her a personal injury.

---

[3] In her Opposition, Godbolt argues that "most of the actions that formed the basis of Plaintiff's conspiracy claim occurred in Maryland," and, thus, that "Maryland is the applicable law." ECF No. 23 at 17. This argument is without merit because Godbolt's Prayer for Relief for Count V, the civil conspiracy count, specifically seeks "[t]hat a finding be entered that the Defendant discriminated against the Plaintiff with malice or reckless indifference to Plaintiff's state protected rights as secured under the laws of Virginia." ECF No. 27 at ¶ 64(h).

Construed as a claim for common law conspiracy, Godbolt's claim is time-barred. Virginia applies a two-year statute of limitations for civil conspiracy resulting in personal injury. *See EER Sys. Corp. v. Armfield, Harrison & Thomas, Inc.*, 51 Va. Cir. 84, 96 (1999) (holding that the two-year statute of limitations for personal injury applies to common law conspiracy). The statute of limitations for a civil conspiracy charge begins running at the time the plaintiff first suffers any damages resulting from the acts committed in furtherance of the conspiracy. *See Jones v. Shooshan*, 855 F. Supp. 2d 594, 602 (E.D. Va. 2012). Viewing the facts in the light most favorable to Godbolt, her first instance of damages, and the consequent beginning of the two-year period, occurred on May 9, 2012, when Godbolt received a disciplinary "write-up" for complaining about being forced to falsify her time card. However, Godbolt did not file her initial Complaint until November 12, 2014. Her civil conspiracy claim is therefore barred by the two-year statute of limitations.

In addition, Godbolt's civil conspiracy claim is barred by the intra-corporate immunity doctrine. Under that doctrine, "acts of corporate agents are the acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) (citing *Bowman*, 229 Va. at 534, 331 S.E.2d at 801). Intra-corporate immunity is precluded, however, where a corporate officer "has an independent personal stake in achieving the corporation's illegal objectives." *Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). In her Opposition, Godbolt asserts that the personal stake exception applies because "the overall boss on the site (Burke) was bent on having Godbolt change her time card from the hours she actually worked to what he (Burke) wanted it to read—*to avoid him getting into trouble*." ECF No. 23 at 19 (emphasis in original).

This argument is unpersuasive because Godbolt failed to include any allegation in her Amended Complaint that Burke was motivated by personal gain in his actions toward Godbolt. Instead, Godbolt asserts only that she was "cajoled by her supervisors, Robert Burke and Mariam Haigler to change her time sheet log," that, when she refused, Haigler and Burke "conspired and changed her time card by themselves," and that "supervisor Burke and Manager Johnson conspired to intimidate Godbolt to change her time card." ECF No. 27 at ¶¶ 19-21. Godbolt's allegations that Burke forced her to falsify her time cards to avoid getting himself into trouble are entirely absent from the Amended Complaint. *See Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 744 (D. Md. 2008) (noting that conspiracy claim must be dismissed for failure to state a claim where "plaintiff made no allegation that the individually named defendants had a personal stake in achieving the corporation's legal objective. . . . Without an allegation that the actions of the . . . Defendants fit within an exception to the intra-corporate conspiracy rule, Count 5 fails to state a claim for civil conspiracy."). Moreover, the written statement from Haigler corroborating that Burke told her that "he would get in trouble" if Godbolt was not forced to falsify her time card, attached as Exhibit 7 to Godbolt's Opposition, was not attached to the Amended Complaint. *See* ECF No. 23-7. Only material contained in or attached to the complaint may be considered in a motion to dismiss. *See Schafler v. Euro Motor Cars*, No. RWT-08-2334, 2009 WL 277625, at *3 (D. Md. Feb. 5, 2009) ("Plaintiff is bound by the allegations contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint.") (quoting *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997)). Godbolt's belated attempt to raise the personal stake exception therefore cannot be considered. Count V is accordingly barred by both the statute of limitations and the intra-corporate immunity doctrine, and is dismissed.

13

## III.    CONCLUSION

For the reasons explained above, Trinity's Motion to Strike Count II is **GRANTED**, and Trinity's Motion for Partial Dismissal is **GRANTED** as to Counts IV and V, and **DENIED** as to Count I. A separate Order follows.


Dated: <u>March 14, 2016</u>

George J. Hazel
United States District Judge